LOUIS J. RUSSO, PLAINTIFF-APPELLANT, v. HARRY A. WALSH, CHIEF EXAMINER AND SECRETARY OF STATE CIVIL SERVICE COMMISSION, NEW JERSEY STATE DEPARTMENT OF CIVIL SERVICE AND WILLIAM F. KELLY, Jr., PRESIDENT OF THE STATE CIVIL SERVICE COMMISSION, NEW JERSEY DEPARTMENT OF CIVIL SERVICE, DEFENDANTS-RESPONDENTS.

Argued February 14, 1955—Reargued March 21, 1955—Decided April 25, 1955.

*Mr. George Pellettieri* argued the cause for appellant.

*Mr. Harold Kolovsky*, Assistant Attorney-General, argued the cause for respondents (*Mr. Grover C. Richman, Jr.*, Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

WACHENFELD, J.   The primary inquiry here is whether or not the power conferred upon the Governor by *Art. V, Sec. IV, par. 5*, of the *Constitution of the State of New Jersey*, to remove state officers and employees from their positions, includes the power to suspend them pending a hearing.   We think it does.

Judgment was entered in the Superior Court, Law Division, 31 *N. J. Super.* 558 (1954), dismissing a civil action in lieu of prerogative writ brought by the plaintiff, Louis J. Russo, against Harry A. Walsh, Chief Examiner and Secretary of the State Civil Service Commission of New Jersey, and William F. Kelly, Jr., President of the Civil Service Commission.

Russo, a disabled war veteran, had for some time been employed as Assistant Chief Examiner in the New Jersey State Department of Civil Service with permanent civil service status in the classified service.   From March 7, 1951 until April 18, 1954 he was the Chief Examiner and Secretary of the Civil Service Commission.   Thereafter he returned to his permanent position of Assistant Chief Examiner.

By Executive Order No. 5, dated June 18, 1954, the Governor of the State of New Jersey, purporting to act under the powers granted him in *Art. V, Sec. IV, par. 5*, of the *Constitution*, suspended plaintiff from his position of Assist-

ant Chief Examiner pending a hearing on charges filed against him of malfeasance and misfeasance in office during the period of his employment as Chief Examiner and Secretary.

The offense charged against him was that from July 1, 1948 to June 30, 1953, while employed as Assistant Chief Examiner and later, as Chief Examiner and Secretary of the Civil Service Commission, he submitted invoices to the Division of Employment Security in the Department of Labor and Industry for payment for alleged overtime services in the amount of $1,000 per year, in violation of *N. J. S. A.* 11:2–2, which prohibits the Chief Examiner and the Secretary of the Commission from holding any "other public office or employment."

Russo was duly served with a copy of the executive order on June 19, 1954, and on Monday, June 21, 1954, he presented himself to his superiors, asserting he was ready, willing and able to continue in the performance of his regular duties, but he was not permitted to resume his employment.

Thereafter, on June 29, 1954, he filed a complaint in lieu of prerogative writ in the Law Division, attacking the authority and jurisdiction of the Governor to suspend him from his position pending notice and hearing of charges preferred against him. He sought judgment against the defendants directing them to reinstate him in his position and to include him on the payroll submitted by them so he could receive his regular salary.

The answer filed by the defendants denied the invalidity of Executive Order No. 5, contending it was issued pursuant to and as an integral part of the removal proceedings instituted against the plaintiff by the Governor under *Art. V, Sec. IV, par. 5,* of the *New Jersey Constitution.* The answer further alleged the court had no jurisdiction, the complaint did not state a cause of action, and the plaintiff had failed to exhaust the remedies available to him.

The matter came on for hearing on an agreed statement of facts, the trial court dismissing the complaint and holding the power to remove granted by the *Constitution of* 1947

under *Art.* V, *Sec.* IV, *par.* 5, includes the power to suspend and that the power to remove was not confined to a charge arising out of conduct committed while holding the position from which suspension was made.

From the judgment so entered, Russo appealed to the Appellate Division, and we granted certification on our own motion prior to argument.

At the outset, we are confronted with challenges to the jurisdiction of the Law Division and of this court, both procedural and substantive, to review the cause at its present stage. Procedurally, it is urged the appellant has invoked the wrong remedy; it is said he should have sought relief initially in the Appellate Division under *R. R.* 4:88–8 by appeal from a "final decision or action of any state administrative agency," being the remedy specified by *N. J. S. A.* 52:14–17.2, dealing with review of removal orders promulgated by the Governor.

Substantively, defendants contend that under the constitutionally decreed separation of powers of the coordinate branches of government, see *Art.* III, *par.* 1, the judicial branch cannot, in this indirect manner, review an executive order of the Governor, even though *Art.* V, *Sec.* IV, *par.* 5, specifically provides for judicial review, on the law and the facts, of the manner in which the Governor has exercised his removal power in a specific case.

However, in view of the importance of the constitutional question presented and the manner of its disposition, we find it unnecessary to pass upon the subsidiary questions presented but pass directly to the merits of the cause.

*Art.* V, *sec.* IV, *par.* 5, provides as follows:

"The Governor may cause an investigation to be made of the conduct in office of any officer or employee who receives his compensation from the State of New Jersey, except a member, officer or employee of the Legislature or an officer elected by the Senate and General Assembly in joint meeting, or a judicial officer. He may require such officers or employees to submit to him a written statement or statements, under oath, of such information as he may call for relating to the conduct of their respective offices or employments. After notice, the service of charges and an opportunity to be heard at public hearing the Governor may remove any such officer or

employee for cause. Such officer or employee shall have the right of judicial review, on both the law and the facts, in such manner as shall be provided by law."

The delegates to the 1947 Convention, adhering closely to our traditional concept of the separation of powers among the three departments of government, legislative, executive and judicial, stressed the thought that the primary responsibility for the conduct of the executive and administrative branches of the government resided in the Governor, and accordingly, for the first time, conferred upon the chief executive the power to meet and discharge the recognized responsibility by investigating the conduct of state employees and granting him the right to remove for cause shown.

The dual power of investigation and removal was but one facet of the sweeping revision of the powers and functions of the executive branch of the State Government which was thought to be necessary. The Convention Committee endeavored:

"* * * to bring the powers of the Governor into line with the popular impression of the powers of that office and to provide for a centralization of authority and power in the office of the Governor under reasonable checks and balances, so that the chief executive may be truly responsible to the people for the conduct of the executive branch of the government." *Report of the Committee on Executive, Militia and Civil Officers, 2 Proceedings of the Constitutional Convention of 1947, 1122.*

It noted that:

"While all three branches of the government should be improved and the responsibility more clearly defined, the greatest need has been to raise the relative position of the Executive, which under our present Constitution [the 1844 Constitution] has been the weakest of the three branches * * *." *Ibid.*

But aside from the inferences, if any, to be drawn from the above statements of the draftsmen, the proceedings of the Constitutional Convention of 1947 are barren of anything shedding light on the specific question before us. Appellant relies heavily upon and deems the absence of specific reference to the suspension power in the Convention debates and in

the Constitution itself to be of prime significance. It is vigorously urged that the suspension of a public employee is a matter wholly distinct and separate from his removal, and the power to suspend does not exist unless specifically granted.

Appellant, however, fails to distinguish between suspension of definite duration used by itself as a form of punishment for misconduct, and suspension as a means of rendering impassive a public employee as an incident to and pending his trial for misconduct. The power to discipline through suspension may frequently be a matter distinct from the power to remove from office, although generally the power to suspend is legally viewed as included within the power to remove since it is merely a lesser form of punishment. See *Burnap v. United States*, 252 *U. S.* 512, 515, 40 *S. Ct.* 374, 64 *L. Ed.* 692, 694 (1920); 43 *Am. Jur., Public Officers, sec.* 242.

But we are not dealing here with a disciplinary suspension disassociated from pending proceedings; under the terms of Executive Order No. 5, appellant's suspension was temporary, "pending the hearing and determination of charges against him of malfeasance and misfeasance in office."

Shortly before the adoption of the 1947 Constitution, the question whether a statutory grant of the power to remove an employee included the power to suspend him pending hearing was passed upon by the former Supreme Court in *Vanderbach v. Hudson County Board of Taxation*, 133 *N. J. L.* 499 (*Sup. Ct.* 1946), affirmed 135 *N. J. L.* 349 (*E. & A.* 1947). There a newly appointed county board of taxation suspended its secretary pending a hearing on charges against him of misconduct in office. The pertinent statute, *N. J. S. A.* 54:3–10, provided for the removal of the secretary for just cause, but was silent on the board's power to suspend him pending a hearing. In response to the claim that his suspension was illegal, Mr. Justice Case said (133 *N. J. L.,* at *page* 509):

"It is apparent that the suspension on August 5th was a temporary detachment, not by way of discipline or punishment, but as pre-

liminary to and integrated with the statutory procedure for removal. That the board conceived the suspension to be such is evidenced by its proceeding to entertain charges leading to removal and fixing an early day for hearing. We have found that the board did have the right to remove prosecutor upon those charges after hearing and proofs as prescribed by statute, and inasmuch as the acts and omissions upon which the charges were founded had all occurred prior to the time of the suspension, we are of the opinion that the board, under the circumstances of the case, had the right to suspend prosecutor over the period reasonably required for the formulating of charges, the serving of them upon the accused, the bringing on of the hearing and the decision of the issue. The greater power includes the less."

Prior to this decision there appears to have been no definitive authority on the subject in this jurisdiction. Expressions to the contrary are noted in *State v. Common Council of Jersey City*, 25 *N. J. L.* 536 (*Sup. Ct.* 1856); *Weinberger v. Hilfman*, 8 *N. J. Misc.* 32 (*Sup. Ct.* 1929); and *Levinson v. Mooney*, 128 *N. J. L.* 569 (*Sup. Ct.* 1942), but the assurance the appellant siphons from these adjudications is hardly justified by the actual context of the decisions rendered.

Elsewhere, a split of authority may be noted, compare *Burnap v. United States, supra*, and *Maben v. Rosser*, 24 *Okla.* 588, 103 *P.* 674 (*Sup. Ct.* 1909), with *Cull v. Wheltle*, 114 *Md.* 58, 78 *A.* 820 (*Ct. App.* 1910). But see *Am. Jur., Public Officers, sec.* 242, where it is stated the suspension of a public officer pending his trial for misconduct "seems to be universally accepted as fair and often necessary."

It is important to note that when the 1947 Constitution was drafted and debated in the Convention, the *Vanderbach* decision represented the most recent and the only authoritative determination in this jurisdiction on the scope of the removal power, and it is permissible to infer that the draftsmen and the delegates were cognizant of the decision and its import during their deliberations and findings.

We think the 1947 Constitution as drafted, granting express power to the Governor to remove public officers after hearing and for just cause, was intended to confer upon him the additional power of temporary suspension incidental to

removal, which had already been engrafted upon the removal power and made an integral part of it by judicial interpretation.

We are not naive enough to be unaware of the possible abuses to which the power of suspension may be subject in the hands of an arbitrary chief executive, which the appellant terms a "weapon of frightful magnitude." But we are also fully conscious of the potential jeopardy to the public interest by the continuance in office of an employee who may have already betrayed his trust and against whom charges of misconduct are pending as a result of a *bona fide* investigation. It needs little reflection to adumbrate the serious impairment which might befall the public good if the chief executive is powerless to protect the State against further defalcations. In *Vanderbach v. Hudson County Board of Taxation*, 133 *N. J. L.* 126, 130 (*E. & A.* 1945), the Court of Errors and Appeals intimated:

"Cases may be readily imagined where the continuance of the incumbent in office during the course of the disciplinary proceedings would seriously disadvantage the public. It might well interfere with official function in substantial particulars; and it might also hamper the investigation of the alleged misbehavior."

The same rationale was depicted in the second *Vanderbach* decision, 133 *N. J. L.* 499 (*Sup. Ct.* 1946), where Justice Case said (at *page* 509):

"Inability of a public board to separate an inferior officer or an employee from his duties temporarily and in good faith pending trial could work serious impairment in the public service and is not, we think, to be taken as the legislative intent in all instances. The power of a board so to act where the public interest requires flows impliedly, almost necessarily, from the power specifically granted. We find that the public interest did fairly so require."

A temporary suspension such as was ordered here does not, as appellant argues, constitute a premature adjudication of guilt any more than does the indictment of an accused under our criminal law. The question of his guilt or innocence is to be determined only after he has been accorded a full public hearing at which he will have an opportunity to be heard in

his own defense. Even in the criminal field, despite the presumption of innocence, our courts have the power to deprive persons under indictment for certain types of offenses of their liberty. See *R. R.* 3:9–1(*a*)(*d*). The power exists because experience has shown it is in furtherance of the general public good, although it undoubtedly infringes to a marked degree upon the personal liberty of the one involved.

In the case of state employees, the public interest likewise fully justifies the existence of the power to suspend temporarily pending a hearing. It is not contended the Governor acted in bad faith in the case *sub judice*, and the record discloses that appellant's suspension was ordered only after an officer appointed by the Governor had conducted an investigation and formal charges had been filed, of which appellant was given notice simultaneously with the suspension order. The merits of the charges are, of course, not before us.

Finally, appellant urges that the suspension order was invalid in that the charges contained in the specification would not constitute grounds for his removal since the acts complained of were committed while he occupied a different position in the State Government, that of Chief Examiner and Secretary of the Civil Service Commission, a position he no longer holds. Under *Art. V, Sec. IV, par.* 5, it is urged the Governor can remove him from his position of Assistant Chief Examiner only for misconduct while holding that office and none other.

In the court below, Judge Schettino aptly disposed of the issue with a realistic approach which we think is sound:

"We cannot conceive that the people intended by voting for the 1947 Constitution to condone and forgive *in futuro* a public servant who might be faithless to his service on the mere chance or design of skipping from one office in which he committed crimes to another office in which he committed none. It is a claimed constitutional sanctuary difficult to conceive and more difficult to uphold."

The judgment below is affirmed.

BURLING, J. (dissenting). The principal question involved on this appeal is whether the removal power vested in

the Governor of the State of New Jersey by the *New Jersey Constitution of* 1947, *Article* V, *Section* IV, *paragraph* 5, includes the power to suspend an officer or employee prior to the hearing made mandatory by the Constitution.

It seems to me that the policy of cause and time of suspension from public office is for the Legislature to determine. Just as it is not a judicial function to lay down the grounds for forfeiture of a public office, *Kobylarz v. Mercer,* 130 *N. J. L.* 44, 47 (*E. & A.* 1943), so also is it without judicial or executive power to lay down the policy as to suspension from office unless expressly and emphatically invested therein by the Constitution of this State, or by valid legislative enactment.

It has been held that a state constitution "is not a grant but a limitation of legislative power," that it is "presumed that the words employed have been carefully measured and weighed to convey a certain and definite meaning, with as little as possible left to implication," and that the "constitutional limitation upon the exercise of legislative power must be clear and imperative." *State v. Murzda,* 116 *N. J. L.* 219, 222–223 (*E. & A.* 1936). *Cf. Behnke v. New Jersey Highway Authority,* 13 *N. J.* 14, 25 (1953). The power to suspend an officer or employee of the State pending an investigation is deemed by the majority of the court to be implied from the constitutional grant of power to the chief executive of this State to investigate and after a hearing to remove such officer or employee of the State. If implied, its scope apparently is unlimited and may extend to any length of time, and to any reason, determined upon by a Governor, since no qualification thereof is contained in the Constitution. This constitutes a limitation upon legislative power to determine the rights and responsibilities appertaining to public office or employment. And it results in the clothing of the Governor with a broad power, tantamount to authority to terminate at will the service and remuneration of state officers and employees regardless of statutory provisions, including civil service requirements. If this were ordained by the State Constitution, its reasonableness would be for the people to

assay. If not so ordained, it should not be imposed by judicial decision.

The broad power to suspend at will any state officer or employee is expressly given to the incumbent of *no* office under the Constitution, although heads of principal executive departments "serve at the pleasure of the Governor." See *N. J. Const.* 1947, *Art.* V, *Sec.* IV, *par.* 2. And the Constitution also provides, *Art.* III, *par.* 1:

"1. The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."

*N. J. Const.* 1947, *Art.* V, *Sec.* IV, *par.* 5, *supra,* is quoted in full in the majority opinion. In brief, it authorizes the Governor to investigate and "After notice, the service of charges and an opportunity to be heard at public hearing" to remove an officer or employee of this State (other than certain specific categories of officer or employee). Compare *N. J. Const.* 1947, *Art.* V, *Sec.* IV, *par.* 4.

The defendants asserted that the power to suspend is implied in the power to remove, and that it was so held in *Vanderbach v. Hudson County Board of Taxation,* 131 *N. J. L.* 491, 494 (*Sup. Ct.* 1944), reversed 133 *N. J. L.* 126, 130 (*E. & A.* 1945); on remand, 133 *N. J. L.* 499, 509–512 (*Sup. Ct.* 1946), affirmed 135 *N. J. L.* 349 (*E. & A.* 1947). In the 1945 decision the former Court of Errors and Appeals indicated "indefinite suspension * * * without the statutory hearing, is inadmissible." (133 *N. J. L.,* at *page* 130). In the 1946 decision of the former Supreme Court, Mr. Justice Case said (133 *N. J. L.,* at *page* 511):

" 'We think it is apparent that the two powers [removal and suspension] cannot always be properly respectively described as the greater and the less, and consequently it cannot always be determined simply upon that ground that the suspension is valid because there was a power to remove.' " (Explanatory phrase supplied.)

Emphasis in the several decisions in the *Vanderbach* case, *supra,* was placed on the coincidence of appointing and re-

moval powers. The appointing power in the present case was not in the Governor.

The history of the constitutional power of the Governor is pertinent. The 1942 proposed constitution provided for investigation on complaint, with removal by the Governor *after* hearing; the 1944 draft authorized investigation by the Governor on his own initiative, with removal *after* hearing and judicial issuance of subpoenas. 2 *Convention Proceedings, Constitutional Convention of 1947, State of New Jersey* (1951), 1411, 1414. The original draft of the 1947 Constitution authorized the Governor to cause investigations to be made, to require written statements under oath, and, *after* public hearing, to remove an employee. *Ibid., pp.* 1118–1119; 1 *Id.* (1949), *pp.* 180–181. The clause for judicial review was added by amendment. 1 *Id.* (1949), *pp.* 263, 295–296.

The monographs pertinent to the Convention proceedings, see 2 *Id.* (1951), *p.* 1383 *et seq.; p.* 1410 *et seq.*, covered the subject of removal by the Governor rather thoroughly and did not suggest that the Governor should have the power of suspension.

In the Committee on the Executive, Militia, etc., several interesting comments were made: former Governor Alfred E. Driscoll approved the power to investigate and the power to remove (but did not suggest suspension powers be granted the Governor); and he said:

"This power to investigate should be * * * not subject to withdrawal by an unfriendly Legislature or * * * *enlargement* by a friendly Legislature. The power to investigate, if it is to have a real meaning, should be accompanied by the power to remove after a proper hearing." (Emphasis supplied) 5 *Id.*, (1953), *p.* 33.

And Mr. Charles R. Erdman, Jr., said:

"* * * it becomes more important than ever to make sure that the Governor be removed from all suspicion that he is in any way using these vast powers for any personal ambition * * *." 5 *Id.* (1953), *p.* 98.

See also 5 *Id.* (1953), *pp.* 56, 89, 91, 366, 375, 388, 415, 437, 476–477.

It was suggested to the Convention that "if the Civil Service is protected in the Constitution and the Governor removes a Civil Service employee, you have a conflict of jurisdiction." 1 *Id.* (1949), *p.* 239. Senator David Van Alstyne, Jr., shortly thereafter addressed the Convention pointing out that the Governor's power of removal *would arise after* notice, service of charges and public hearing, and that the words "for cause" were inserted to show that the clause in the Constitution gave the Governor a *quasi*-judicial status. 1 *Id.* (1949), *p.* 240. Former Chief Justice Thomas J. Brogan observed that "If a state official is to be tried before the Governor and to be removed from office" it should be clear that he should have "a review of that conviction and removal * * * before a court of competent jurisdiction." 1 *Id.* (1949), *pp.* 241–242. See also 1 *Id.* (1949), *pp.* 145–147, 235–243, 290.

Application of the principles declared in the *Vanderbach* case, *supra*, in the light of the history of *Art.* V, *Sec.* IV, *par.* 5 of the *New Jersey Constitution of* 1947, *supra*, leads me to the conclusion that the grant to the Governor of the removal power was not intended to, and did not, include the power of suspension. It follows that the power of the Legislature to control suspension of officers and employees of the State has not been impaired.

The Legislature has provided that *no* employee of the State under civil service "shall be suspended * * * for a period of greater than thirty days in the aggregate in any one year" without the right of appeal to the Civil Service Commission. *L.* 1938, *c.* 76, *sec.* 1, as amended by *L.* 1946, *c.* 184, *sec.* 1, *N. J. S. A.* 11:2A–1. The Legislature has also provided in the Civil Service Act "No such employee shall be suspended * * * for a period greater than five days at one time without the same right of appeal * * *." *Ibid.*

It was contended by the defendants that the judiciary may not review the action of the Governor. It has been said that no direct judicial review is available. *Cf. Allan v. Durand*, 137 *N. J. L.* 30, 32–33 (*Sup. Ct.* 1948).

However, an action in lieu of the former prerogative writ of *mandamus* is appropriate under *R. S.* 11:16–1, as amended by *L.* 1947, *c.* 201, *sec.* 5, to compel certification of the plaintiff's pay, and similar relief to restore the plaintiff to the performance of his duties seems to be within the judicial power. This course constitutes at the most a collateral attack on the suspension order, and the jurisdiction obtains to resolve the issue of existence of the asserted power. See *Youngstown Sheet & Tube Co. v. Sawyer,* 103 *F. Supp.* 569 (*D. C. D. C.* 1952), affirmed 343 *U. S.* 579, 72 *S. Ct.* 863, 96 *L. Ed.* 1153 (1952).

For the reasons hereinabove expressed I would reverse the judgment of the Superior Court, Law Division, and remand the matter to the Superior Court, Law Division, for reinstatement of the complaint and for further proceedings in accordance with the pertinent rules of practice and procedure.

Mr. Chief Justice VANDERBILT and Mr. Justice OLIPHANT join in this dissent.

*For affirmance*—Justices HEHER, WACHENFELD, JACOBS and BRENNAN—4.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT and BURLING—3.