128 N.J. Super. 563 (1974)
321 A.2d 262
JOSEPH A. GRZANKOWSKI, PLAINTIFF-APPELLANT,
v.
RONALD M. HEYMANN, NEW JERSEY COMMISSIONER OF LABOR AND INDUSTRY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1974.
Decided May 31, 1974.
*564 Before Judges CONFORD, HANDLER and MEANOR.
Mr. Thomas F. Shebell, Jr. argued the cause for appellant.
Mr. I. Leo Motiuk, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by HANDLER, J.A.D.
Appellant is a judge of compensation who is appealing a five-day disciplinary suspension imposed upon him by the Commissioner of the Department of Labor and Industry. The issue presented is whether the Commissioner of the Department of Labor and Industry has the power to discipline judges of compensation in a manner not involving permanent removal from office or whether such power reposes exclusively in the Governor.
*565 Appellant, as a judge of compensation, does not contend that he is a member of the judiciary. Bonafield v. Cahill, 125 N.J. Super. 78 (Ch. Div. 1973), aff'd 127 N.J. Super. 149 (App. Div. 1974). He does assert that as a state officer or employee it is only the Governor who may suspend him under N.J. Const. (1947), Art. V, § IV, par. 5. This constitutional provision in pertinent part states:
The Governor may cause an investigation to be made of the conduct in office of any officer or employee who receives his compensation from the State of New Jersey * * *. After notice, the service of charges and an opportunity to be heard at public hearing the Governor may remove any such officer or employee for cause.
It has been recognized that the Constitution by necessary implication has conferred upon the Governor the ancillary power to impose less drastic forms of discipline. Russo v. Governor of New Jersey, 22 N.J. 156 (1956), settled this point:
The power to remove without permitting any intermediate degrees of penalty clearly would not be consistent with the concept of adequate supervision. Nor could it have been reasonably intended that the Governor should have the power to discharge an employee for some obvious but minor infraction of his duty. The purpose of the constitutional provision in question is obviously to give the Governor power commensurate with his responsibility. To grant him the power only to remove for cause and to withhold from him the power to administer lesser penalties in appropriate instances is not only unrealistic, but it will also in most cases be ineffective to accomplish the fundamental purpose for the repose of the authority. That the right to impose all lesser degrees of punishment is inherent in the right to remove for cause is recognized by the majority of this court in Russo v. Walsh, 18 N.J. 205 (1955), supra, in dealing with the power of the Governor to suspend pending a hearing before him. The only conflict evident from the dissent in that case was that the constitutional power should not be construed so as to permit an effective removal by preliminary suspension prior to a due and proper hearing, Id., 18 N.J. at pages 213-218. In the grant of supervisory power to the Governor the underlying considerations were that he should not be made, on the one hand, the subject of control by an unfriendly Legislature, nor, on the other hand, should the public officers over whom the power was to be exercised be subject to the whims and prejudices of an ambitious executive, 5 Proceedings of the Constitutional *566 Convention of 1947, 33, 98. Thus, a constitutional provision which spoke in terms of a maximum grant of power  the power to remove  attended with such safeguards as a public hearing and a right to judicial review which provided adequate protection to the individual officer or employee, answered all of the objections to the pre-existing inadequacy of gubernatorial power and responsibility. The Governor, therefore, under the authority vested in him by Article V, Section IV, paragraph 5 of the Constitution, must be viewed as having the power not only to remove for cause after proper hearing but also to impose all intermediate or lesser degrees of punishment suitable to the proven misconduct. Cf. Russo v. Walsh, 18 N.J. 205 (1955). [at 166-167]
Appellant argues that the constitutional power to remove public employees is vested exclusively in the Governor, and since that power subsumes the incidental power to discipline and suspend, it follows that this lesser included authority is exercisable solely by the Governor. Support for this position is drawn from L. 1969, c. 252, § 2, which amended N.J.S.A. 34:15-49, and an opinion of the Attorney General (Sept. 29, 1971) that the Governor alone has the power to institute and conduct disciplinary proceedings, and that as a result of L. 1969, c. 252, the power to discipline judges of compensation no longer resides in the Commissioner of Labor and Industry.
The circumstances surrounding the adoption of the constitutional provision, which lodged in the Governor the power to remove state employees, do not suggest that the ancillary power to impose lesser forms of discipline upon such employees was one intended to be exerted solely by the Governor to the exclusion of any other agency or arm of government. The authority granted the Governor by the Constitution to investigate the conduct of public officials and to bring about their removal had as its avowed purpose "to give the Governor adequate supervision over public officers and employees consistent with the responsibility imposed on the Governor for the executive administration of government, on the one hand, and the doctrine of the separation of powers on the other." Russo v. Governor of New Jersey, supra at 166. The salient reason of the drafters of the 1947 Constitution *567 for this provision was that "the primary responsibility for the conduct of the executive and administrative branches of the government resided in the Governor, and accordingly, for the first time, conferred upon the chief executive the power to meet and discharge the recognized responsibility by investigating the conduct of state employees and granting him the right to remove for cause shown." Russo v. Walsh, supra, 18 N.J. at 209.
It is unnecessary in advancing the constitutional thesis of a strong and responsible chief executive with the power to control state personnel to regard that power as preemptive. Comparable powers may be reposed in ranking officials within the executive branch of government without militating against the Governor's ultimate responsibility for the performance of state officers and employees. Moreover, the exercise of such similar powers to discipline employees by department heads or other superior officers would seem reasonably necessary to relieve the Governor of what would otherwise be the vast burden of being directly responsible for all disciplinary proceedings involving state officers and employees.
Complementary disciplinary powers existing in ranking departmental officers is also evidenced from the legislative understanding contemporaneous with the adoption of the 1947 Constitution. Thus, in the very act relating to the reorganization of the executive branch of the State Government and establishing the Department of Labor and Industry, L. 1948, c. 446, passed shortly after the adoption of the 1947 Constitution for the purpose of implementing its mandate, the Commissioner, as head of the department, was given the express authority to "[a]ppoint and remove officers and other personnel employed within the department, subject to the provisions of Title II of the Revised Statutes, Civil Service, and other applicable statutes * * *." L. 1948, c. 446, § 3(b); N.J.S.A. 34:1A-3(b). Quite clearly, the statutory authority in the Commissioner of Labor and Industry to remove departmental employees, and inferentially to discipline *568 such employees, was not, in the milieu of the 1947 Constitution, thought to be at odds with the Governor's identical but paramount constitutional authority.
Appellant argues, however, that even in the absence of a constitutional barrier, the statute giving the Commissioner the power to remove and, by implication, to suspend employees has been superseded by L. 1969, c. 252, § 2, amending N.J.S.A. 34:15-49. This statute, enacted on January 7, 1970, provides:
The Division of Workmen's Compensation shall have the exclusive original jurisdiction of all claims for workmen's compensation benefits under this chapter. The judges of the Division of Workmen's Compensation shall hereinafter be appointed on a bipartisan basis by the Governor, with the advice and consent of the Senate and shall serve during good behavior. The salaries of the director of the division and the judges of compensation shall be $27,000.00. Judges of compensation shall not engage in the practice of law and shall devote full time to their judicial duties.
The essential purpose of this statute was to elevate the quality of the judges of compensation by requiring their appointment in the same manner as judges serving in the judicial branch of government. Obviously, the 1969 amendment cannot be squared with the statutory power to appoint judges of compensation which had theretofore existed in the Commissioner since 1948 under N.J.S.A. 34:1A-3(b). As a consequence, the appointment of judges of compensation can no longer be made by the Commissioner.
Implied repealers, however, are a disfavored legislative technique. It is not to be assumed that the Legislature intended by a subsequent enactment to repeal existing legislation unless there is no way the statutes can co-exist. Dept. of Labor and Industry v. Cruz, 45 N.J. 372 (1965). Evidence of statutory incompatibility reflecting a legislative intention to supplant a prior law must be clear and compelling. Loboda v. Clark Tp., 40 N.J. 424 (1963).
Here the later amendment of N.J.S.A. 34:15-49 deals expressly with the appointive function. It does not purport to treat the subject of the removal of judges of compensation. *569 It cannot, therefore, be stated categorically that the Legislature intended to repeal that provision of the earlier act, N.J.S.A. 34:1A-3(b), which granted removal powers to the Commissioner. But since we are not presently concerned with an act of removal by the Commissioner, that precise issue need not be decided. We conclude that the Commissioner does have the power under N.J.S.A. 34:1A-3(b) to discipline departmental employees through a short-term suspension. This power to regulate and control the conduct and performance of employees was not intended by implication to be curtailed or abrogated by the amendment of N.J.S.A. 34:15-49.
Moreover, the power to assure proper performance by employees may reasonably be implied from the express authority in the Commissioner to "[f]ormulate and adopt rules and regulations for the efficient conduct of the work and general administration of the department, its officers and employees * * *." N.J.S.A. 34:1A-3(f). Less directly, the power to discipline employees may also be extracted from the general authority of the Commissioner to "[a]dminister the work of the department" and to "[p]erform, exercise and discharge the functions, powers and duties of the department through such divisions * * *." N.J.S.A. 34:1A-3(a), (c). The power to take disciplinary action may also be supplemented by the right of the Commissioner, as the head of the department, to initiate legal proceedings necessary for the proper enforcement or effectuation of his powers and duties. N.J.S.A. 34:1A-3(g).
We would affirm but for the fact that the Commissioner suspended appellant without the issuance of formal charges or a public hearing. It is now conceded that these procedural safeguards should not have been dispensed with. Hence, while we uphold the power of the Commissioner to discipline judges of compensation by suspension in appropriate cases, the action taken in this instance is reversed and the matter remanded for further proceedings which shall include formal notice and a hearing on the charges.