[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#175)
This matter comes before the court on a motion to strike the plaintiff's revised complaint (#174), dated June 9, 1992.
 I.
The Revised Complaint
The Revised Complaint alleges in Count One that this action was brought to secure and vindicate rights guaranteed to the plaintiff by Article First, Section 10 of the Connecticut Constitution, the Fourteenth Amendment to the United States Constitutions, Connecticut General Statutes, 7-273, Section 10-2
of the Hamden Charter and the common law of the State of Connecticut.
Therein it is alleged that the plaintiff has been the Chief of Police of the Town of Hamden, that the defendant Carusone was elected mayor of Hamden in November, 1987, and that he was the Chief Executive Officer of said town at all pertinent times, and that he is being sued individually and in his official capacity.
It is further alleged that the acts of the named defendant as alleged are the actions and policies of the Town of Hamden.
It is also further alleged that the named defendant has been personally hostile to the plaintiff and has carried out a persistent campaign of vilification of the plaintiff, who has carried out his duties in an exemplary manner and has an excellent reputation.
It is then alleged that on May 17, 1989 the named defendant caused to be delivered and released to the public a memorandum, with an appendix of charges, purporting to inform the plaintiff of his immediate suspension from his position as Chief of Police, and that the named defendant would hold a hearing on such charge which might lead to the dismissal of the plaintiff as Chief of CT Page 3983 Police.
It is further alleged that such charges were false and known by the named defendant to be false, and intended to injure the plaintiff's reputation and impair his opportunities for employment.
It is then alleged that the plaintiff was given no opportunity for a hearing prior to suspension, and that there was no precipitating event to warrant such suspension; and that the named defendant ordered the plaintiff to vacate his office.
Finally, it is alleged that the actions of the defendants as described
(1) deprived the plaintiff of rights under Section 10-2 of the Hamden Charter;
(2) deprived the plaintiff of rights to due process of law as guaranteed by (a) the Fourteenth Amendment to the United States Constitution (b) 42 U.S.C. § 1983 (c) Article First, Section10 of the Connecticut Constitution;
(3) deprived the plaintiff of rights secured by Section7-278, Connecticut General Statutes.;
(4) deprived the plaintiff of liberty without due process of law by subjecting him to public stigma, without opportunity to be heard, as secured by (a) Article First, Section 10 of the Connecticut Constitution, (b) the Fourteenth Amendment to the U.S. Constitution and (c) 42 U.S.C 1983;
(5) deprived the plaintiff of property without due process of law by depriving him of his employment without an opportunity for hearing, thereby abridging rights secured by the aforesaid constitutions and statutes, referred to in (4) supra.
It is further alleged that by the lack of a pre-suspension review as to any legally tenable basis for such suspension, the plaintiff was deprived of rights guaranteed to him by the alone cited constitutional and statutory provisions.
Finally, it is alleged that the plaintiff has suffered a variety of financial, physical and emotional injuries as a result of the wrongful actions of the plaintiffs. CT Page 3984
Count Two realleges the wrongful acts of the defendants and further alleges that the dismissal proceedings were initiated maliciously and without probable cause, and that such proceedings were terminated in his favor, and that the initiation of such proceedings caused the plaintiff financial, emotional and physical injury.
Count Three realleges the wrongful acts of the defendants and further alleges the charges and defamatory statements were made with actual malice and with knowledge such statements were false, thereby damaging the reputation of the plaintiff, causing him injury.
Count Four realleges Count Three (except the allegations of injury) and further alleges malicious interference with the plaintiff's right to earn a livelihood, and with his economic advantage and property right to continue as Chief of Police.
Count Five realleges Count Four and further alleges an intent to inflict severe emotional distress.
Count Six realleges Count Four and further alleges a claim for negligent infliction of emotional distress.
By way of relief, the plaintiff claims compensatory and punitive damages, double or treble damages pursuant to 52-568, Connecticut General Statutes, attorney's fees pursuant to42 U.S.C. § 1988, costs, interest and other relief.
 II.
The defendant John L. Carusone, individually, has moved to strike each Count for failure to state a cause of action.
As to Count One (Constitutional Statutory Violations), the motion claims:
(a) failure to set forth allegations as to how his constitutional rights were impaired;
(b) no allegation of impairment of statutory rights;
(c) no allegation of loss of rights to wages, salary or benefits, either temporarily or permanently; CT Page 3985
(d) no showing in the complaint or the court record of violations of the right to due process;
(e) mere allegations of wrongful conduct will not support the cause of action;
(f) a violation of constitutional law may not be predicated upon a rule of law not announced prior to the time of the alleged violation;
(g) failure to exhaust administrative remedies;
(h) the allegations are conclusory;
(i) the allegations show that the actions taken were imposed on the defendant Carusone by law (Sec. 7-278, Connecticut General Statutes) and the law of immunity bars the actions.
As to Count Two (vexatious litigation) the motion claims:
(a) A claim of vexatious litigation may not be predicated upon a rule of law which had not been announced at the time of the alleged violations;
(b) the claim does not lie to challenge an administrative proceeding;
(c) immunity, as the actions were duties imposed by law;
(d) allegations are conclusory;
(e) failure to exhaust administrative remedies.
As to Count Three (Defamation), the motion claims:
(a) statute of limitations;
(b) immunity as the actions were duties imposed by law;
(c) allegations are conclusory;
(d) failure to exhaust administrative remedies.
As to Count Four (Tortious Interference with Financial CT Page 3986 Expectancy) the motion claims:
(a) immunity as the actions were duties imposed by law;
(b) allegations are conclusory;
(c) failure to exhaust administrative remedies.
As to Count Five (Intentional Inflictions of Emotional Distress) the motion claims:
(a) such claim cannot be predicated upon a rule by law that had not been announced at the time of the alleged violation;
(b) immunity as the actions were duties imposed by law;
(c) allegations are conclusory;
(d) failure to exhaust administrative remedies.
As to Count Six (Negligent Infliction of Emotional Distress) the motion claims:
(a) statute of limitations;
(b) — (e) as to Count One and claims set forth under Count Four.
In the interests of judicial economy, the court allowed the defendant Town of Hamden to file a motion to strike (#186). A review of the grounds of the motion shows it essentially to track the motion of the defendant Carusone.
The defendant Carusone filed a memorandum in support of his motion which was adopted by the defendant town.
A motion to strike contests the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. The court is limited to the facts alleged in the complaint, and the facts in the complaint must be construed most favorably to the plaintiff. A motion to strike may be granted if the complaint alleges mere conclusions of law unsupported by the facts alleged. Novametric Medical Systems Inc. v. BOC Group Inc., 224 Conn. 210, 214, 215. The court can consider only the grounds specified in the motion; however, the motion searches the CT Page 3987 whole record. Stradmore Development Corp. v. Commissioners,164 Conn. 548, 555. The motion does not admit any allegations contradicting what previously appeared certain on the record. White v. Avery, 81 Conn. 325, 328.
Previous Proceedings
 A.
The record indicates that the instant proceedings were initiated as a result of actions by the defendant, acting as Mayor and Chief Executive of the Town of Hamden.
On May 17, 1989, the defendant as Mayor aforesaid notified the plaintiff that he was giving the plaintiff notice that dismissal proceedings were being instituted pursuant to Section7-278 of the Connecticut General Statutes, and suspending the plaintiff from his position as chief of police, with, however, full pay and benefits. The notice further provided that the Mayor would relinquish his position as the hearing officer under the statute, and that the Mayor would yield that position to an arbitrator.
The plaintiff immediately commenced proceedings for a temporary injunction to restrain the defendant Mayor from proceeding with the termination proceedings.
Thereafter, by stipulation entered into between the plaintiff and the defendant Carusone, dated March 5, 1991, the Hon. Thomas J. O'Sullivan, State Trial Referee, was designated to act as the hearing officer to conduct the hearing set forth in Sec. 7-278 Connecticut General Statutes, to determine (1) whether the Town had just cause to dismiss the plaintiff and (2) whether the plaintiff had adequate notice of the specific grounds for dismissal given to him. Said State Trial Referee would have all the powers of the hearing officer designated by statute to conduct the hearing including the power to find facts and determine questions of law.
Said stipulation further provided that the plaintiff, only, was entitled to appeal to the Superior Court from an adverse decision.
Said stipulation further provided that said Thomas J. O'Sullivan, State Trial Referee, acting as a State Trial Referee, CT Page 3988 would find facts and reach conclusions of law as to whether the defendant had the authority to suspend the plaintiff in the manner in which it was done. Said stipulation further provided that should the Hon. Thomas J. O'Sullivan, State Trial Referee conclude that the defendant did not have authority to suspend the defendant, any damages therefrom would be decided by a jury in a subsequent trial.
Further, either party would have the right to appeal Judge O'Sullivan's decision to the Superior Court.
 B.
Judge O'Sullivan commenced the hearing, pursuant to the above stipulation, on March 4, 1981, and continued the hearing through 25 sessions.
On July 29, 1991, Judge O'Sullivan filed a memorandum of decision describing his doings. Therein, he ruled in favor of the plaintiff on the premise that the notice given by the defendant, Carusone, on behalf of the defendant, was fatally defective in that there was never any notice given to the plaintiff that any conduct by him would result in dismissal proceedings. He declined to review the specific charges in the light of his ruling.
 C.
Judge O'Sullivan, sitting as a Senior Trial Referee also ruled in the suspension matter.
In his memorandum of decision, he noted that the defendant had previously threatened the plaintiff with suspension on three occasions and that there was no dispute as to whether a mayor had power to discipline the plaintiff with respect to a specific incident.
He then found that when the defendant Carusone suspended the plaintiff, he did that as part of the dismissal process, and noted the lack of precedent on the issue. He then ruled that the defendant Carusone did not have the authority to support the plaintiff "in the way in which it was done pending the hearing under 7-278 of the General Statutes."
That decision was not appealed and accordingly, became a CT Page 3989 final judgment after the expiration of the appeal period. Although the ruling appears interlocutory in nature Breen v. Stet Phelps, 186 Conn. 86, 99, the ruling is binding on this court and cannot be reviewed (State v. Deep, 181 Conn. 284). This does not preclude the court from determining as a matter of law whether any further relief may flow from such finding.
 III.
The First Count appears to plead several causes of action.
"`A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief (citations omitted). A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitutes the cause of action.'" Hayes v. Smith, 194 Conn. 52, 62 (Internal quotation marks omitted.)
The "primary right" that appear in Count One appear to be (1) the continued employment of the plaintiff as chief of police and (2) the right to continue to occupy the office free from suspension. Accordingly, the analysis of the several alleged causes of actions must start with an analysis of whether either is a legally protected interest, either by way of statute, ordinance, common law, or the Connecticut or United States Constitutions. DeLaurentis v. New Haven, 220 Conn. 225, 249.
By both statutes (Sec. 7-278, Connecticut General Statutes) and implementing ordinance (Sec. 10-2), the active head of a police department may not be dismissed without a showing of just cause, notice in writing, and an opportunity to be heard in his own defense at a public hearing. "A pre-eminent source of a property right in employment cases is the "for cause" requirement in the removal process of the employee . . . . Thus, the existence of a `for cause' limitation for dismissal establishes an individual entitlement to continued employment that is significant enough to be considered a property right to which due process protections attaches." Bartlett v. Krause, 209 Conn. 352,367, holding that a fire marshal had a property interest in continued employment that is protected by due process. Compare Sec. 29-300 Connecticut General Statutes. CT Page 3990
It should not be disputed that the plaintiff's right to continued employment i.e. not to be dismissed, is such a property right. Board of Regents v. Roth, 408 U.S. 564, 576-78; Lee v. Board of Education, 181 Conn. 69, 72.
The next question is whether the right to continue employment includes the freedom from suspension.
The dismissal statute (Sec. 7-278) makes no mention of suspension. The defendant Carusone cites a provision in the statute regarding the power of a local board of education to suspend a teacher from duty "immediately" when serious misconduct is charged. See Section 10-151(d), Connecticut General Statutes, which also prescribes the hearing process in contract termination.
The United States Supreme Court stated in Board of Regents, supra, at p. 577, "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to these benefits"; cited in Bartlett v. Krause, supra, p. 365. The Board of Regents, decision is further cited for the proposition that "`to have a property interest in a benefit," a person must "have a legitimate entitlement to it." idem.
The plaintiff argues that absent a grant of authority to suspend, pending a hearing, the plaintiff had a right not to be suspended without a hearing, citing, Bunocore v. Branford,192 Conn. 399. He further claims that the suspension abridged "an enforceable expectation of continued and uninterrupted public employment, subject to dismissal or suspension only for . . . cause.'" citing Krause v. SBA, 502 F. Sup. 1332, 1338 (1980) and Goss v. Lopez, 419 U.S. 565 (1975).
 IV.
Having reviewed the revised complaint in the light of the motion to strike, the court finds that the operative paragraphs dealing with the issue of liability are paragraph 10 and 12.
Essentially, paragraph 10 alleges that on May 17, 1989, the defendant Carusone caused to be delivered and released to the CT Page 3991 public a memorandum purporting to notify the plaintiff of charges and that a hearing would be held to consider the charges, and whether the plaintiff should be dismissed.
Paragraph 10 also alleged that the plaintiff was informed he was immediately suspended; paragraph 12 alleges that the plaintiff was afforded no opportunity for hearing prior to suspension.
Paragraph 15 and succeeding paragraphs refer to "[T]he actions as set out above." The foregoing paragraphs are the only two that describe any "actions".
 "In any event, [t]he interpretation of pleadings is always a question of law for the court [Guiel v. Barnes, 100 Conn. 737, 743, 125 A. 91 (1924)]. . . . Hendrie v. Hendrie, 7 Conn. Sup. 186, 190 (1939). We have pointed out that [t]he burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties. Price v. Bouteiller, 79 Conn. 255, 64 A. 227 [1906]. But essential allegations may not be supplied by conjecture or remote implication. [Id]. (Emphasis added). Preleski v. Farganiasz, 97 Conn. 345, 348, 116 A. 593 (1922)."
Cahill v. Board of Education, 198 Conn. 229, 236.
Further, the court will decide the issue on the theory presented to it by the parties Fuessenich v. DiNardo, 195 Conn. 144,151.
Accordingly, since the issues of dismissal and suspension have been bifurcated, and decisions reached on both matters, the CT Page 3992 only issue before the court at this juncture is whether the plaintiff is entitled, as a matter of law, to any of the damages claimed in the revised complaint, solely on the basis of wrongful suspension. Accordingly the court will not consider any of the allegations of Paragraph 10, i.e. delivery and publication of notice, for other than delivery of the notice of suspension the reasons (1) that such "actions" was part of the dismissal process, and separate and distinct from the suspension issues and (2) to the extent that it is alleged in Paragraph 11 that such charges were false, the motion will not admit such facts since Judge O'Sullivan, empowered to do so did not find such charges to be false. White v. Avery, Supra. 328.
The gravamen of the revised complaint is set forth in para. 12 is that the plaintiff was allowed no pre-suspension hearing, i.e. the delict of the claimed causes of actions. Hayes supra. p. 62.
The causes of actions claimed are set forth hereinafter.
 A.
Statutory Violation
Paragraphs 15 and 17 of Count One both claim that the "actions" of the defendant Carusone deprived the plaintiff of rights secured by Section 10-2 of the Hamden Charter and Section7-278 of the General Statutes. Neither paragraph, in the context of the contents of the complaint, will support a cause of action. Specifically, paragraph 17 misstates the statute by adding "or may otherwise be subjected to discipline or interference in his occupancy or conduct of the office of Chief of Police." The charter reference merely invokes the statute. Since the record clearly shows that the plaintiff sought and obtained a procedure different from the statute, and no allegations may be considered to contradict the terms of the stipulation. White v. Avery, supra.
 B.
Constitutional Violation
Paragraph 16 alleges a deprivation of rights to due process of law guaranteed by the 14th Amendment, 42 U.S.C. § 1983, and Article First Section 10 of the Connecticut Constitution. CT Page 3993
The plaintiff makes no separate analysis of any rights guaranteed by the Connecticut Constitution. See State v. Campbell, 224 Conn. 168, 181n 10. As to any due process rights "guaranteed" by 42 U.S.C. § 1983, it should be noted that liberty interests arise from the Due Process clause itself and the laws of the States. State v. Campbell, supra, p. 182. Protected property interests arise from "independent sources" such as state laws; Board of Regents v. Roth, supra. 42 U.S.C. § 1983 guarantees no rights but provides a cause of action for damages and other relief for violation of rights guaranteed by the United States Constitution. Apparently, the plaintiff is claiming a due process violation based upon a claim of right not to be suspended in dismissal proceedings.
Paragraph 18, as argued by counsel, claims a deprivation of liberty without due process. Again, there is no separate analysis of the rights guaranteed by the Connecticut Constitution. As noted, supra, 42 U.S.C. § 1983, is not a source of a protected liberty.
Paragraph 19 apparently claims a deprivation of due process of property without due process by depriving him of employment without a hearing. Again the court must resort to federal precedents to determine whether such a claim exists.
Paragraph 20 appears to restate the claim that suspension without a hearing is violative of guaranteed rights. This, also boils down to a review of federal precedents.
The burden of Paragraphs 16, 18, 19 and 20 is that the suspension without a hearing, in this context, was a deprivation of due process rights to property and liberty, guaranteed to the plaintiff by the Fourteenth Amendment.
As noted in Board of Regents, property interests are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law. So, in Board of Regents, supra, the Supreme Court held the extent of Roth's property interest in continued employment was created and defined by the terms of his contract. Such contract had no provision for renewals; hence, there was no claim of entitlement and no property interest in being rehired.
The statute that governs dismissal of a chief of police CT Page 3994 (Sec. 7-278 Connecticut General Statutes) provides for an hearing — not less than five nor more than ten days after notice. Whether the power to commence discharge proceedings includes the power to suspend while such proceedings are pending has not been decided by our appellate courts. However, the issue has been decided by the appellate courts of other jurisdictions as may be noted, infra.
In Bartlett v. Krause, supra, at page 366, the Supreme Court notes that "Connecticut statutory law created and defined the property interest", of the plaintiff i.e. the right to continued employment.
By the same token, if the legislature in providing the safeguards in the dismissal process had intended to prohibit the suspension of the police chief during such process, it could have done so. It did not. We may look to the common law of other jurisdictions in construing the intent of the legislature as to the suspension issue, Sutherland Statutory Construction, 40-015, since no statute is to be construed as extending the common law further than its words express; Buckman v. People Express Inc.,205 Conn. 166, 172.
Having considered the dismissal statute and the authorities, the court can find no basis for finding that the suspension of the plaintiff by the defendant Carusone, involved any property right of the plaintiff, created by Connecticut law so as to warrant any monetary relief.
As to the claim of deprivation of a liberty right, the court must look to the nature of the interest at stake. Board of Regents, supra, 408 U.S. at 571. In Board of Regents, the Court suggested that if the refusal to reemploy Roth was based upon a charge of dishonest or immorality, failure to provide him with a forum to refute such charges would be denial of liberty. Id. 573, citing Wisconsin v. Constantineau, 400 U.S. 433, 432. In the instant matter, the charges commencing this dismissal process were delineated. They were not so spelled in the notice of suspension. In any event, it cannot be disputed that the plaintiff had a hearing on the charges so specified.
The court finds that the allegations of deprivation of protected rights to liberty and property are conclusory only and the revised complaint contains no facts to support such allegations of deprivations of rights. Our Supreme Court has CT Page 3995 noted the difference between termination as "the grave sanctions of outright severance" and "a temporary suspension". Bartlett v. Krause, supra, p. 378. Further, since he was suspended with full pay and benefits, he has received all the monetary relief he is entitled to under state law. Chotkowski v. Personnel Appeal Board, 176 Conn. 1, 6.
The cases cited by the plaintiff as to the requirement of hearing in suspension matters all relate to disciplinary suspension, e.g. pursuant to civil service rules. Conversely, the United States Supreme Court has noted that even in such circumstances, an employer may avoid the due process requirement of a pretermination hearing by suspending the employee with pay which the defendant has done in this case. Loudermill v. Cleveland Board of Education, 470 U.S. 532, 1085 at 1487, 149584 L.Ed.2d 494.
The court finds that as to any cause of action pleaded in Count One, the plaintiff has pleaded only conclusions of facts and law insufficient to state a claim upon which relief can be granted under Connecticut Law. Board of Regents, supra.
 IV.
As noted, supra, Judge O'Sullivan ruled that the suspension was involved in the dismissal process, and not as a disciplinary measure. As such, the ruling is the law of the case.
The Court has found that no Connecticut statute or decision created a property or liberty right warranting protection by the due process clause. Accordingly, the claim of the plaintiff that he had a protected property right in being free from suspension pending a dismissal hearing must be determined from federal decisions based upon state actions. Board of Regents, supra. Further, the plaintiff has the obligations to plead facts to support a finding that a rule of law creating such a right has been promulgated prior to the incident in question so that a reasonable person taking such actions would know that the effect of such actions would be an invasion of a federally guaranteed right. Strickland v. Wood, 420 U.S. 308, 95 S.Ct. 992; Harlow v. Fitzgerald, 457 U.S. 800, 813, 102 S.Ct. 2737.
As to the first issue, the court in Washington v. Starke,626 F. Sup. 1149 sets forth the procedure whereby a court may determine whether such a constitutional right existed at the time CT Page 3996 of the alleged delict. Washington was concerned with the question was to whether a fleeing felon had a right not to be fired upon by a pursuing officer.
"Due process analysis begins with the identification of the life, liberty or property interest at state." State v. Campbell,224 Conn. 168, 187. The Due Process clause only prevents the state from acting in derogation of an interest protected by the Constitution of the United States. State v. Davis, 190 Conn. 327,337. The due process provisions of the federal and Connecticut constitutions have a common meaning. State v. Pickering, 180 Conn. 54, 55 n. 1.
In order to determine whether a right to a hearing prior to suspension as part of the process of dismissal proceedings, this court must determine whether there was a clearly established constitutional right as of the date of notice of suspension.
A constitutional right or entitlement may arise from the text of the Federal Constitution as interpreted by the courts, or it may arise out of the substantive laws of the states and be protected by the due process clause of the fourteenth amendment, upon review of the constitutional common law. Washington, supra. p. 1153. The determining factor is the nature of the interest. Board of Regents, 408 U.S. 570, 571, 92 S.CT, 2705-6 (noting that, as to a state created right, due process required such an analysis). See Meachman v. Fano, 427 U.S. 223, 96 S.CT 2532,2538, 2539.
A review of the laws of the states that have addressed this issue shows that a substantial majority of the states that have addressed the issue are in accord with the statement in 63 Am.Jur.2d Public Offices and Employees, 290: "The suspension of an officer pending his trial for misconduct seems to be universally accepted as fair and often necessary." See also 56 Am.Jur.2d Municipal Corporations etc., 312.
This position has been codified in New York. McKinney's Consolidated Laws of New York, Annotated Civil Service Laws, Sec. 75(3). See Application of Lindquist, 81 N.Y.S.2d 15.
The following cases support the general rule as stated:
State v. Police Commissioners, 16 Mo. App. 48, 51 (Chief of Police). CT Page 3997
State ex rel Douglass v. Megaarden, 85 Minn. 41, 88 N.W. 412
(county sheriff).
Chace v. Providence, 36 R.I. 331, 89 A. 1066, 1074 (milk inspector) and cases cited.
LaBonte v. Town of Berlin, 85 N.H. 89, 154 A. 91 (police officer).
Vanderbch v. Hudson City Board of Taxation, 133 N.J.L. 499,45 A.2d 148 (tax board secretary).
Griner v. Thomas, 101 Tex. 36, 104 S.W. 1058 (suspension of judge).
Maben v. Rosser, 240 KAN 588, 103 P. 674 (suspension of judge).
Russo v. Walsh, 31 N.J. Super 558, 107 A.2d 528, aff. 18 N.J. 205,113 A.2d 516 (civil service examiner) (based upon interpretation of New Jersey Constitution).
Contra:
Cull v. Whettle, 114 Md. 58, 78 A. 820. (board of police commissioners) (based upon interpretation of Maryland constitution).
Rose v. Arnold, 183 Okla. 286, 82 P.2d 293 (board of education) (1 judge dissenting).
As noted supra, the requirement of "just cause" for actions taken against a public officer implicates the due process clause to vindicate a right protected by the constitution.
In view of the substantial support for the majority rule, it is clear that on the issue of suspension, no protected property right is implicated; since such suspension may occur without a hearing.
The court has also considered the claim of deprivation of liberty right on the basis that the charges created a "stigma" on the reputation of the plaintiff. See Board of Regents, supra. CT Page 3998
The court notes that the suspension order was non-accusatory and straight forward. The stigma, if any, arose from the charges in the dismissal proceeding. Judge O'Sullivan's ruling on the suspension was limited to the manner in which it was done pending the hearing under 7-278 of the statutes. See Paul v. Davis,424 U.S. 693. As noted supra, in Board of Regents v. Roth, the Supreme Court noted that where there is a charge that may damage the standing of the office holder in the community, a hearing would be essential, citing Wisconsin v. Constantneau, 400 U.S. 433,437. Suffice it to say that the plaintiff has had a hearing with a procedure he obtained by court action. A liberty interest is not implicated. See Krause v. SBA, 502 F. Sup. 1332, 1338
cited by the plaintiff (as to adequacy of hearing).
The plaintiff has failed to plead facts that establish that the defendant violated a rule of law protecting a constitutional right that had been promulgated at the time of the incident. Harlow, supra.
Immunity
A defendant may raise the issue of immunity in a motion to strike based on the sufficiency of the complaint. See Heigl v. Board of Education, 218 Conn. 1, 587 A.2d 423 (1991). In a motion to strike, the court "must examine the complaint, assuming the truth of all well pleaded facts, to determine whether the plaintiff, under each count, has stated a legally sufficient cause of action." Greene v. Metals Selling Corp., 3 Conn. App. 40,42 484 A.2d 478 (1984).
The Connecticut Supreme Court has cited Butz v. Economow,438 U.S. 478, 511-12 (1978), for the proposition that there are two requirements for a grant of prosecutorial immunity: "(1) the need for immunity for the process as a shield against the crippling effect of unlimited vexatious suit actions; and (2) the presence of safeguards against prosecutorial abuse." DeLaurentis v. New Haven, 220 Conn. 225, 245, 597 A.2d 807 (1991).
In discussing the history of and need for immunity in judicial settings, DeLaurentis states:
 The judge on the bench must be free to administer the law under the protection of the law, independently and freely, without fear of CT Page 3999 consequences. No such independence could exist if he were in daily apprehension of having an action brought against him, and his administration of justice submitted to the opinion of a jury. Were he not immune, no man but a beggar or fool would be a judge[,] because in every suit there is a loser eager to avenge his loss, and in every unsuccessful prosecution there is an accused eager to exact a penalty for his ordeal.
Id., 241. (quotations and citations omitted).
The same reasoning justifying judicial immunity also justifies the need for immunity in a section 7-278 removal proceeding. A mayor must be free to administer his office independently, and that no such independence could exist if he were in apprehension of legal action each time he instituted removal proceedings. Thus, the first of the two requirements for immunity — the need to protect against unlimited retaliatory actions — is satisfied.
In deciding whether the second of the requirements exists the safeguards against abuse — DeLaurentis provides some assistance. In DeLaurentis, the Supreme Court held that a mayor who presses removal proceedings against a subordinate is entitled to prosecutorial immunity in some circumstances. Id., 242. In order for the mayor to receive the immunity, the removal proceedings must be sufficiently like a judicial hearing.
In DeLaurentis, the court held that the safeguards were inadequate to grant immunity. There, the mayor of New Haven sought to remove the chairman of the city's parking authority. The mayor selected a procedure in which a neutral arbitrator would make findings of fact and recommendations. However, regardless of the outcome of the arbitration, the mayor reserved the right to reject the arbitrator's decision and remove the chairman. Id., 243-44, n. 5. The court found that while the proceeding used was similar to a judicial hearing, it was too distinct to grant prosecutorial immunity. The court drew the distinction on the grounds that in the "hearing" before it, the ultimate decision could be made by the same person responsible CT Page 4000 for prosecuting the proceeding. Such a case lacks the necessary safeguards against abuse official power. Thus it refused to grant immunity.
In the instant case, the parties agreed that neutral arbitrator would preside over the removal proceedings (Judge O'Sullivan). However, the submission to Judge O'Sullivan in this the safeguards against abuse — DeLaurentis provides some assistance. In DeLaurentis, the Supreme Court held that a mayor who presses removal proceedings against a subordinate is entitled to prosecutorial immunity in some circumstances. Id., 242. In order for the mayor to receive the immunity, the removal proceedings must be sufficiently like a judicial hearing.
In DeLaurentis, the court held that the safeguards were inadequate to grant immunity. There, the mayor of New Haven sought to remove the chairman of the city's parking authority. The mayor selected a procedure in which a neutral arbitrator would make findings of fact and recommendations. However, regardless of the outcome of the arbitration, the mayor reserved the right to reject the arbitrator's decision and remove the chairman. Id., 243-44, n. 5. The court found that while the proceeding used was similar to a judicial hearing, it was too distinct to grant prosecutorial immunity. The court drew the distinction on the grounds that in the "hearing" before it, the ultimate decision could be made by the same person responsible for prosecuting the proceeding. Such a case lacks the necessary safeguards against abuse official power. Thus it refused to grant immunity.
In the instant case, the parties agreed that neutral arbitrator would preside over the removal proceedings (Judge O'Sullivan). However, the submission to Judge O'Sullivan in this case gave him the power to "find facts and reach conclusions of law, and have all of the powers conferred in Section 7-278
C.G.S." Submission, para. 4.
A review of the submission shows that the defendant surrendered to Judge O'Sullivan his right to preside at the hearing. Unlike DeLaurentis, the submission did not reserve the mayor's right to preside at or to make the ultimate decision on the proceeding. By vesting the ultimate decision granting power to a neutral party, the mayor provided adequate safeguards to prevent him from abusing his authority to remove Ambrogio. The safeguard made the proceeding sufficiently like a judicial CT Page 4001 hearing that prosecutorial immunity attaches to the defendant's acts.
Thus, both of the requirements for prosecutorial immunity are satisfied. The 7-278 proceeding is one which needs a grant of prosecutorial immunity to shield it from retaliatory suits; and the mayor has provided adequate safeguards to prevent an abuse of authority. Thus the plaintiff cannot state a claim against the mayor based on the removal proceedings.
The immunity so found, as applied to count one, shields the plaintiff from any liability for any action taken, pursuant to the removal process. This will, of course, include the suspension order. "This privilege extends to every step of the proceeding until final disposition." Petyan v. Ellis, 200 Conn. 243,246; Phelps v. Sill, 1 Day 315, 329.
For similar reasons all of the remaining counts are stricken. Since all of the statements made by the defendant Carusone in his notice to the plaintiff are privileged he cannot be held liable for any of the remaining causes. Kelley v. Bonney, 221 Conn. 549, 571 citing DeLaurentis v. New Haven, supra.
As discussed in DeLaurentis, p. 265, the charges being privileged, will not support a claim for defamation (Count Three), infliction of emotional distress (Count Five); nor, a fortiori, negligent infliction of emotional distress (Count Six). Likewise, neither Count 2 (Vexatious Litigation) nor Count 4 (Tortious Interference) is sufficient as a matter of law to support the allegations claimed therein.
The motion to strike is granted as to all counts, as is the motion to strike filed by the defendant Town. See Brandon v. Holt, 469 U.S. 464.
Robert P. Burns, Judge CT Page 4002